CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 0 5 2008
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTHONY J. SANDERS, | ) | |
| Plaintiff, | ) | Civil Action No. 7:08-cv-00307 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| KATHLEEN J. BASSETT, et. al., | ) | By: Hon. James C. Turk |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Anthony J. Sanders, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Sanders alleges that after having most of his teeth extracted during his incarceration at Keen Mountain Correctional Center ("KMCC"), he waited many months to receive dentures, even after he had been fitted for them.[1] He also complains that KMCC's failure to provide a regular dentist for its inmates violated his rights. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[2]

I

Sanders alleges the following sequence of events on which his claims are based. He arrived at KMCC in August 2001 with 29 teeth in his mouth. Over the years, KMCC dentists extracted 18 of those teeth and in October 2005, took impressions of his gums to fit him for top and bottom dental

---

[1] Sanders sues Kathleen J. Bassett, Warden of KMCC; Ms. M. Gilbert, a nurse at KMCC; and Fred Schilling, "TLC Health Director.

[2] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

plates. On June 9, 2006, Sanders filed the first in a series of informal request forms asking if his plates had arrived.[3] He stated on the forms that it was difficult to eat certain foods with only a few teeth and no dental plates. Each time, in response to the form, an officer wrote that Sanders was on the list to see the dentist and would be evaluated. Having failed to achieve resolution through the informal request process, Sanders filed a regular grievance on January 19, 2007, stating that he had been waiting over 15 months to receive his dental plates. The warden deemed the grievance unfounded, because Sanders was on the list to see the dentist and would be seen "in the order [his] name was received." The response informed Sanders that if his dental problems presented an emergency, he could utilize the regular sick call procedure to be evaluated for palliative treatment until a dental appointment could be arranged. Sanders's appeal from the warden's grievance response was also deemed unfounded by VDOC administrator Fred Schilling.

Sanders waited until May 15, 2007, to file another inmate request to see the dentist, and Nurse Gilbert responded that he was on the list. Finally, in October 2007, Sanders was taken off the KMCC compound to see the dentist, who extracted two more front teeth. Now, Sanders had only six teeth on the lower jaw and one on the top. The dentist also made impression moldings for Sanders's dental plate and said that Sanders would return in a month or two to have the top tooth extracted and get top and bottom dental plates. On December 1, 2007, the dentist removed that last top tooth, and Sanders received his dental plates. Back at KMCC after that appointment, Sanders's face swelled up, and the institutional doctor had to give him an injection to cause the swelling to go down.

Sanders claims that without his dental plates, he suffered pain in his top and bottom gums

---

[3] He filed similar request forms on September 30 and December 29, 2006.

2

when he tried to chew and that he had trouble digesting his food. He also complains that he did not have a followup visit to be sure that his dental plates fit correctly and now suffers swollen gums and discomfort from wearing the plates. Also, he is now scheduled to have surgery to address two small knots right behind his left jawbone. He asserts that these knots were caused by inadequate dental care.

II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Thus, both an objective and a subjective component are needed. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in

3

treatment do not state cognizable constitutional claims under the Eighth Amendment. Estelle, 429 U.S. at 105-06; Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

It is clear that dental care has been recognized as "one of the most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980). The Second Circuit has noted, however, that "a correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of . . . prisoners would not in freedom or on parole enjoy the excellence in dental care which the plaintiffs understandably seek on their behalf." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, prison officials cannot be liable for damages under § 1983 related to dental care so long as they "provide the minimum level of [dental] care required by the Constitution." Ruiz v. Estelle, 679 F.2d 1115, 1150 (5th Cir.), vacated in part as moot, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983). "[T]he essential test is one of medical necessity and not one simply of desirability." Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981) (citations omitted).

To state a § 1983 medical claim against supervisory officials, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to known misconduct by the prison physicians. Miltier, 896 F.2d at 854; Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Non-medical prison personnel may rely on the opinion of the medical staff as to the medical necessity for treatment and what the proper course of treatment is. Miltier, 896 F.2d at 855.

III

Under these principles, the court cannot find that Sanders alleges facts stating any

4

constitutional claim. First, it is clear from his narrative that KMCC has provided him with extensive dental care since 2001—extractions of 18 teeth, impressions for dentures, dental plates, and now surgery. No one has ignored his dental problems. Second, he does not allege facts indicating that any of his past dental conditions at any point constituted a medical emergency necessitating more immediate treatment. At the most, he alleges having difficulty and discomfort in chewing and some unspecified problems with digesting his food. He does not allege that these minor inconveniences caused him any severe pain or health problems, such as weight loss.[4] Nor does he allege that softer foods that were easier to chew would not have been made available to him if he had asked. Although he was advised to file a sick call request if he felt that his dental condition had progressed to an emergency level, he does not allege ever having done so.

Third, given the non-emergent nature of Sanders's condition, the court cannot find that the delays between the extractions and impressions and actually distributing his dental plates were an unreasonable response to his needs. Dental care in the non-inmate world often involves extensive delays as well, dental plates do not always fit right the first time, and followup visits get delayed. Officials whose response to a medical risk is reasonable cannot be liable under § 1983.

Fourth, to the extent that Sanders alleges some error by the dentist in deciding to extract the teeth, in taking the impressions, or in fitting the plates, he states nothing more than a claim of negligent medical treatment or medical malpractice, which is not actionable under § 1983. Because the court will dismiss all federal claims, the court declines to exercise supplemental jurisdiction over any possible state law claims, such as a medical malpractice action. See 28 U.S.C. § 1367(c).

---

[4]Even if Sanders could now allege additional facts concerning more severe problems that he suffered as a result of the delay in receiving his dental plates, he did not include any such information in his grievances so as to put the defendants on notice that his condition had worsened.

5

Fifth, as to Defendants Bassett and Schilling, Sanders fails to demonstrate supervisory liability. He does not allege that these defendants were responsible for determining whether or not his dental condition was of an emergency nature, requiring more immediate treatment than he received, or that these administrators interfered in any way with the course of treatment prescribed by the dentist or the triage procedures conducted by the medical staff. Moreover, Sanders fails to allege facts indicating that the KMCC policy is unconstitutional. Specifically, he fails to show that a policy of taking inmates off-site to the dentist for emergency conditions, offering palliative care in the meantime, and first come, first served treatment for non-emergency dental conditions is an unreasonable response to the risks of harm presented by inmates' dental problems in general or by Sanders's dental condition in particular.

Finally, Sanders fails to allege facts or present documentation indicating that he exhausted his administrative remedies as to any of his claims that his dental plates do not fit correctly. Thus, he has not met the prefiling exhaustion requirement of 42 U.S.C. § 1997e(a) and cannot yet pursue such claims in a civil action in this court.

IV

For the stated reasons, the court finds that Sanders's allegations fail to state any claim that anyone has been deliberately indifferent to any serious medical need for more prompt dental treatment. Accordingly, the court finds no actionable claims under § 1983 and will dismiss the complaint accordingly, pursuant to § 1915A(b)(1). An appropriate order shall be entered this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 5th day of May, 2008.

/s/ James C. Turk
Senior United States District Judge